UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LOUIS WATSON,

    Petitioner,

    v.

THOMAS CAREY, Warden,

    Respondent.
    _____/

No. C 04-2354 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Louis Watson, a California state prisoner who is proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it and lodged exhibits with the court. Petitioner filed a traverse. For the reasons discussed below, the court DENIES the petition.

## BACKGROUND

A jury convicted petitioner of four counts of theft by false pretenses and six counts of first degree burglary, under California Penal Code sections 368(d), an elder abuse statute, and 459, respectively, and sentenced petitioner to twenty-four years and four months in prison.[1] Petition ("Pet."), Ex. 3 at 2-3 (The Opinion of the California Court of Appeal). The convictions were for charges pertaining to four separate victims. The California Court of Appeal reversed the judgment as to one count of theft and three counts of burglary all

---

[1] Cal Pen. Code § 368(d) provides penalties for the commission of various criminal acts contained in other sections of the Penal Code, against the elderly.

pertaining to one of the four victims; and affirmed the judgment as to all remaining counts pertaining to the other three victims. *Id.* at 28. Petitioner's sentence was reduced to twenty-one years and eight months. *Id.* After the California Supreme Court denied his petition for review, petitioner filed the instant petition.

The California Court of Appeal summarized the case as follows: "The charges against defendant arose out of home improvement projects that defendant contracted to perform for four elderly homeowners. Defendant was accused of taking money from these elderly victims by means of false pretenses and misrepresentations, and of entering their homes with the intent to commit theft by false pretenses." *Id.* at 2. Further details of the charges will be provided as the court examines petitioner's contentions.

Petitioner's six contentions are that: (a) there was insufficient evidence to support petitioner's convictions for theft by false pretenses; (b) there was insufficient evidence to support petitioner's convictions for burglary; (c) there was prosecutorial misconduct; (d) the trial court's denial of a motion to sever violated petitioner's constitutional rights; (e) the trial court improperly admonished the jury; and (f) cumulative error necessitates the granting of relief.

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."

*Williams (Terry) v. Taylor*, 529 U.S. 362, 412-413 (2000). A state court decision is an "unreasonable application" of Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *See id.* at 413.

A reviewing federal court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams (Terry)*, 529 U.S. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409. When there is no reasoned opinion from the highest state court to consider a petitioner's claims, the court looks to the last reasoned opinion, in this case that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).

## DISCUSSION

*A.     Claims One and Two: Sufficiency of Evidence to Support Convictions*

   *1.     Legal Standards*

A reviewing federal court analyzes a state prisoner's allegations of insufficient evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979). Under *Jackson*, the federal court "determines only whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. *Id.* at 324.

A reviewing federal court should take into consideration all of the evidence presented at trial. *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006). If confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. A jury's credibility determinations are entitled to "near-total deference." *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of

3

circumstances, *Jackson* does not permit a reviewing federal court to revisit credibility determinations. *See id.*

According to the California Court of Appeal, "[a] theft conviction on the theory of false pretenses requires proof that (1) the defendant made a false pretense or representation to the owner of property; (2) with the intent to defraud the owner of that property; and (3) the owner transferred the property to the defendant in reliance on the representation. [Citations.] In this context, reliance means that the false representation 'materially influenced' the owner's decision to part with his property; it need not be the sole factor motivating the transfer. [Citation.] ... Reliance may be inferred from all the circumstances." Pet., Ex. 3 at 2. That the victims were elderly within the meaning of the elder abuse statute, is not disputed.

Burglary is defined as entering a dwelling "with intent to commit grand or petit larceny or any felony." Cal. Pen. Code § 459.

*2. Evidence as to Katherine Stephenson*

Petitioner contends that there was insufficient evidence to support his conviction of one count of theft by false pretenses and one count of burglary committed against Katherine Stephenson. *See* Mem. of P. & A. in Support of Traverse ("Trav.") at 9.

The evidence shows that petitioner and Katherine Stephenson entered into a contract in which petitioner agreed to replace and paint Stephenson's fence in return for $3,250, which Stephenson paid to petitioner the same day. Pet., Ex. 3 at 17. Petitioner returned at least twice to Stephenson to ask for money, stating that the materials – such as "top-of-the-line redwood" – were costlier than he had thought. *Id.* at 17-18. Stephenson gave petitioner a check for a further $4,625 on which she wrote "painting, fence in full," thereby bringing the total amount paid to $7,875. *Id.* at 18.

The prosecution's expert testified that the fence was not built with the promised and more expensive redwood, but rather with untreated construction-grade fir and pressure-treated fir, and that the overall construction was shoddy. *Id.* at 18. A reasonable estimate for the cost of construction was, the expert testified, $1,309.75. *Id.* The expert also

testified that not only were areas of the fence not painted, but that those that were painted were painted badly.  *Id.*  The estimated cost for a proper paint job, the expert testified, would have been $2,760, including materials, labor and profit, bringing the total cost of the project to $4,069.75, some $3,805.25 less than the amount Stephenson paid to petitioner.  *Id.*

The court finds that this evidence is sufficient to support petitioner's conviction for theft by false pretenses.  The evidence shows that Stephenson transferred her money to petitioner in reliance on his representations that he would competently replace and paint her fence.  Testimony from the expert witness was sufficient to establish that petitioner failed to paint the fence as promised and did not use the agreed-upon materials, thereby providing a reasonable basis for the jury to believe that petitioner's initial and subsequent representations were false.  A rational jury could therefore conclude that petitioner, through his misrepresentations, intended to defraud Stephenson.

The court also finds that a rational jury could, from the evidence presented at trial, find that petitioner committed the crime of burglary.  The evidence shows that petitioner entered Stephenson's dwelling more than once and, as stated above, committed theft by false pretenses.  A rational jury could reasonably conclude that he entered with the intent to commit this theft.

*3.    Evidence as to James and Rebecca Cason*

Petitioner contends that there was insufficient evidence to convict him of one count of theft by false pretenses and two counts of burglary against James and Rebecca Cason.  *See* Trav. at 10, 11.

The evidence shows that in 2000, petitioner, unsolicited, knocked on the Casons' door and suggested that they should have their windows replaced.  Pet., Ex. 3 at 19.  The Casons contracted with petitioner to replace thirty windows in their house for a total cost of $28,850.  *Id.*  After receiving $10,000 from the Casons, petitioner subsequently suggested that they should have (higher-priced) vinyl windows because they lived on a windy street.  *Id.*  The Casons gave petitioner an additional $13,000 to cover this increased cost and also

1  paid the remainder owed under the contract.  *Id.*

2  At trial, the prosecution's expert testified that there was "not necessarily" a difference
3  in price between vinyl and the first sort of windows petitioner had suggested to the Casons.
4  *Id.* at 20.  Although the expert did not know the exact cost difference, he did not "believe
5  there was a major difference."  *Id.*  The expert testified that the cost of replacing the
6  Casons' windows with vinyl ones would be $19,320 (for materials and labor), some $9,530
7  less than the contract price of $28,850.  *Id.*  The total estimated cost, the expert testified,
8  might vary somewhat depending on how much restoration work on the original windowsills
9  was needed, a detail that was absent from the trial's evidentiary record.  *See id.*

10  The court finds that this evidence is sufficient to support petitioner's conviction for
11  theft by false pretenses.  The evidence shows that the Casons transferred their money to
12  petitioner in reliance on his representations, including an implied representation that he
13  would charge a reasonable price, rather than an inappropriately inflated one.  Testimony
14  from the prosecution expert as to the true cost of vinyl windows provided a reasonable
15  basis for the jury to believe that petitioner's representation as to cost had been false.  A
16  rational jury could therefore conclude that petitioner, through his misrepresentations,
17  intended to defraud the Casons.

18  The court also finds that a rational jury could, from the evidence presented at trial,
19  find that petitioner committed the crime of burglary.  The evidence shows that petitioner
20  entered the Cason's dwelling twice and, as discussed above, committed theft by false
21  pretenses.  A rational jury could reasonably conclude that he entered with the intent to
22  commit this theft.

23  *4.   Evidence as to George Andrade*

24  Petitioner contends that "the evidence of theft by false pretenses was insufficient
25  and petitioner's convictions must be reversed." Trav. at 13.  Specifically, he contends that
26  there were no written contracts or estimates and that Andrade's testimony was
27  contradictory and unreliable.  *Id.* at 12-13.

28  The evidence shows that victim George Andrade gave petitioner checks totalling

6

$29,450 in exchange for petitioner performing various house and yard repairs. Pet., Ex. C. at 22. The many duplicate checks appear to have been written for work Andrade had already paid petitioner to perform. *Id.* The Court of Appeal provides this example:

> [O]n June 6 and 8, Andrade wrote defendant two checks, one for $1,750 and the other for $3,775, both of which contained the notation "fence job complete." Andrade wrote another check to defendant on June 8, 2000, for $7,875 with the notation "fence job complete." While Andrade's testimony regarding the specific work he had asked defendant to perform in that area of his yard was very confused, he did testify that defendant was to build a fence that would correct a leaning retaining wall in his backyard. With respect to the second check for $3,775, Andrade testified that defendant had told him he had done additional work on the wall, specifically he had "straighten[ed] it out up against the fence." The expert testified, however, that no work was done on the retaining wall itself, and that the fence would do nothing to prevent the wall from leaning. When asked about the purpose of the fence, the expert answered that it was just camouflage so one would not see the wall itself. The expert also estimated that proper repair of the old retaining wall, including removing the new fence and taking down the old retaining wall, excavating some of the dirt behind the wall and rebuilding the wall, would cost approximately $5,000.

*See id.*

The court finds that this evidence is sufficient to support petitioner's conviction for theft by false pretenses. The evidence shows that Andrade transferred his money to petitioner in reliance on his representations that he would perform various house and yard repairs. Testimony from the prosecution's expert as to what tasks were actually completed and as to a reasonable amount to charge for performing such tasks was sufficient to establish that petitioner misrepresented the work that he had done and a reasonable cost for doing it. A rational jury could therefore conclude that petitioner intended to defraud Andrade when he repeatedly asked Andrade for money for work already paid for, or for work that was either never completed or completed poorly.

The court also finds that a rational jury could, from the evidence presented at trial, conclude that petitioner committed the crime of burglary. The evidence shows that petitioner repeatedly entered Andrade's dwelling and, as discussed above, committed theft by false pretenses. A rational jury could reasonably conclude that he entered, on at least one of those occasions, with the intent to commit this theft.

In conclusion, the court finds that a rational jury could have reasonably inferred from the evidence presented at trial, that petitioner committed the crimes of theft by false

pretenses and burglary against all three victims.  Habeas relief on this claim is, therefore, DENIED.

B.   *Claim Three: Prosecutorial Misconduct*

Petitioner contends that the prosecutor misled the jury to believe that the evidence of his having grossly overcharged his victims was sufficient to convict him of the crimes charged, violating his rights to due process and to a jury:

> The prosecutor urged conviction...on the patently incorrect legal theory that petitioner could be convicted of elder abuse and burglary on the basis of "gouging," that is grossly overcharging[ ] the mentally frail complainants for the work that was done.  The prosecutor's argument created the impression that evidence of overcharging could **substitute for evidence of actual misrepresentations** lost to the complainants' impaired memories.

Trav. at 16.

1.   *Procedural Default*

Respondent contends that petitioner's claim of prosecutorial misconduct is procedurally defaulted because at trial neither an objection to the alleged misconduct, nor a request for an admonition, was made.  Memorandum in Support of Answer at 17. Petitioner acknowledges that at trial his counsel did not object or request an admonition to cure any harm.  Trav. at 17.

A federal court, as a matter of comity and federalism, will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729-730 (1991).  In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  *Id.* at 750.  The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where there was a complete failure to object at trial.  *See Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005).

*Inthavong* is directly on point here. Because his counsel failed to object at trial – a fact that is not disputed – petitioner's claim is procedurally defaulted. Furthermore, petitioner has not demonstrated whether there was cause for the default, or whether there was actual prejudice or demonstrated that a failure to consider the claims would result in a fundamental miscarriage of justice.

Furthermore, even if petitioner's claim were not procedurally defaulted, it would fail on the merits, for the reasons set forth below.

### 2. *Prosecutorial Misconduct*

Claims of prosecutorial misconduct are reviewed under the narrow standard of due process and not the broad exercise of supervisory power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Id.; Smith v. Phillips*, 455 U.S. 209, 219 (1982). Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. *See Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005). A prosecutorial misconduct claim is decided "on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995), *cert. denied*, 516 U.S. 1017 (1995). In determining whether the misconduct violated due process, a court may take into account the weight of evidence of guilt, whether the misconduct relates to a critical part of the case, whether the prosecutor's comment misstates or manipulates the evidence, or whether the defense invited the error. *United States v. Young*, 470 U.S. 1, 19 (1985).

The record reflects shows that the prosecutor appropriately argued consistent with the law that specific intent was required: "I'm asking you to use common-sense application to the facts of this case to determine where the truth lies as to the two issues which is during the time frame at issue did Mr. Watson display the specific intent to defraud his victim and did he have the specific intent to commit theft." Answer, Ex. B, Vol. 5 at 1245-1246. The prosecutor also acknowledged that evidence of overcharging alone was

9

insufficient to prove that a criminal act had been committed:

> This was the agreement [between petitioner and Stephenson] right here. And this is what they contracted to do ... If things stop here, even given the poor quality of the workmanship involved, we are not going to pursue this. It's what takes place that turns this into a crime and shows that at the time he did this he had no intention of fulfilling this obligation to her.

*Id.* at 1249-1250.

Petitioner misapprehends the facts; the prosecutor did not argue that mere overcharging was sufficient. Rather, the record reflects that the prosecutor offered a legal theory that was identical to petitioner's own, that is, that evidence of overcharging alone was insufficient to render petitioner's acts criminal. Because the evidence shows that he advanced a correct legal theory – and one identical to the one petitioner did and continues to advocate – the prosecutor's conduct could not have infected the trial with unfairness and such conduct could not violate petitioner's right to a jury.

Because the prosecutor carefully instructed the jury as to the correct law, there can be no violation of petitioner's right to a jury based on this contention.

Petitioner advances the alternative argument that his counsel's failure to object to the prosecutor's argument constitutes ineffective assistance of counsel. Trav. at 17.

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Petitioner's claim is obviously without merit. As stated above, the prosecutor carefully stated that overcharging alone was an insufficient basis on which to find petitioner's acts criminal, therefore an objection would have been unwarranted and unnecessary.

10

Habeas relief on this claim is, therefore, DENIED.

C.   *Claim Four: Instructional Error*

Petitioner contends that the "trial court's admonition that the jury not consider evidence of the elderly complainants' diminished capacity for any purpose other than their reliance on petitioner's representations violated due process, the confrontation clause, and petitioner's right to counsel." Trav. at 17. The trial judge instructed the jury that:

> You have heard evidence that some witnesses had diminished mental capacity. You are to consider the evidence only as it relates to the question of whether they relied on any promises or representations you may find that Mr. Watson made. You are to consider this evidence for no other purpose.

Ans., Ex. B, Vol. 5 at 1204-1205. Petitioner contends that this instruction contravened CALJIC No. 2.20, which allows the jury to consider the ability of the witness to remember or to communicate any matter about which the witness has testified.[2] Petitioner also contends that the instruction violated his due process rights by "impermissibly lightening the prosecutor's burden of proof, drawing the juror's attention to a particular body of evidence and all but telling them outright to draw only the inference that favored the prosecution." *Id.* at 19-20. Petitioner further contends that the instruction violated his confrontation rights by withdrawing from the jury the most powerful evidence available, i.e., that some witnesses were not reliable. *See id.* at 19-20. The court notes, however, that this instruction "was

---

[2] California Jury Instruction 2.20, "Believability of a Witness," reads in relevant part: Every person who testifies under oath [or affirmation] is a witness. You are the sole judges of the believability of a witness and the weight to be given the testimony of each witness. In determining the believability of a witness you may consider anything that has a tendency reasonably to prove or disprove the truthfulness of the testimony of the witness, including but not limited to any of the following:The extent of the opportunity or ability of the witness to see or hear or otherwise become aware of any matter about which the witness testified; The ability of the witness to remember or to communicate any matter about which the witness has testified; The character and quality of that testimony; The demeanor and manner of the witness while testifying; The existence or nonexistence of a bias, interest, or other motive; The existence or nonexistence of any fact testified to by the witness; The attitude of the witness toward this action or toward the giving of testimony [.] [;][A statement [previously] made by the witness that is [consistent] [or] [inconsistent] with [his] [her] testimony] [.] [;][The character of the witness for honesty or truthfulness or their opposites] [;][An admission by the witness of untruthfulness] [;][The witness' prior conviction of a felony] [;][Past criminal conduct of a witness amounting to a misdemeanor] [;][Whether the witness is testifying under a grant of immunity].

11

drafted by and given at the request of defense counsel." Pet., Ex. 3 at 25.

*1.  Procedural Default*

Respondent contends that petitioner's claim is procedurally defaulted because the instruction was drafted and submitted by defense counsel and was, therefore, invited error. Mem. in Support of Answer at 23-24.

The Ninth Circuit has stated that invited error may constitute a procedural bar if the state court has "clearly and expressly invoked" the doctrine. *Leavitt v. Arave*, 371 F.3d 663, 685 (9th Cir. 2004). The California Court of Appeal stated that "any asserted error was invited by defendant and provides no ground for appeal" and cited a California case as support for this determination. Pet., Ex. C at 25.

Thus, it is clear from its opinion that the California Court of Appeal based its decision on a reckoning of petitioner's rights solely under California law. Because it did not discuss or analyze petitioner's federal claims as to this issue, the court finds that the California Court of Appeal did not clearly and expressly invoke the doctrine of invited error. Accordingly, petitioner's claim is not procedurally defaulted.

Even though petitioner's claim is not procedurally defaulted, it fails on the merits, for the reasons set forth below.

*2.  Due Process and Confrontation Clause Violation*

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The only question for federal courts is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991), *quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Id.*, *quoting Cupp*, 414 U.S. at 147.

The court concludes that the allegedly ailing instruction did not, by itself, so infect the entire trial that the resulting conviction violates due process. As an initial matter, there was

evidence in addition to the victims' testimony that supports the jury's verdict:  documentary evidence in the form of cancelled checks and a written contract, the testimony of the prosecution's expert, and petitioner's admissions.  Thus, even assuming that the victims' testimony was flawed, as petitioner argues, there was other evidence sufficient to meet the elements of the charged offenses.  Second, the limiting instruction forbid the jury from considering only one of the many factors that bear on credibility, which left it free to consider a host of other factors including those listed in CALJIC 2.20.  Third, the instruction may have helped petitioner as much as it hurt him:  it may have helped him in that the jury was firmly directed to consider the victims' mental state, and was reminded that there had been evidence that some of them indeed suffered from a diminished mental capacity which may have raised a reasonable doubt as to the element of reliance.  The court acknowledges that the instruction may also have had a negative impact by preventing the jury from rejecting certain testimony regarding the exact details of the contracts, thereby reducing the possibility the jury might find a reasonable doubt as to the element of misrepresentation.  On balance, however, and in light of the documentary and other testimonial evidence, the court concludes that the allegedly flawed instruction, requested by petitioner's own counsel, did not so infect the trial that the resulting conviction violated due process.

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him."  U.S. Const. amend. VI.  The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee.  *Crawford v. Washington*, 541 U.S. 36, 61 (2004).  A Confrontation Clause violation is subject to harmless error analysis.  *United States v. Bowman*, 215 F.3d 951, 961 (9th Cir. 2000).  For purposes of federal habeas corpus review, the standard for prejudice applicable to violations of the Confrontation Clause is the familiar *Brecht* standard, whether the error had a substantial and injurious effect or influence in determining the jury's verdict.  *Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing *Brecht v Abrahamson*, 507 U.S. 619,

637 (1993)).  As with any constitutional violations, petitioner must show that he suffered actual prejudice.  *Id.*

The court concludes that petitioner has not demonstrated actual prejudice.  Defense counsel had an opportunity to test, examine, and impeach, in the jury's presence, the victims' credibility.  As with the analysis of the due process claim, when the court considers defense counsel's full opportunity to examine witness along with the weight of all the evidence presented at trial, court concludes that the instruction did not have a substantial and injurious effect or influence in determining the jury's verdict.

### 3. Ineffective Assistance of Counsel

Although petitioner labels his argument as a denial of his right to counsel, he argues in essence that his counsel was ineffective for requesting the instruction.  Trav. 17, 22.  Trial counsel asked that the court instruct the jury that the court admitted "evidence of vulnerability of the complainants" only as it relates to the element of reliance.  Answer, Ex. B, Vol. 1 at 30.  Without such a limiting instruction, the jurors might not use the evidence properly and therefore petitioner would face "a lot of undue prejudice" because the jurors will think "he is on trial for taking advantage of old people in a noncriminal way."  *Id.*  It is difficult to tell from these statements exactly what defense counsel meant.  The court takes defense counsel to mean that he did not want the jury to be swayed by pity or sympathy for the victims because of their enfeebled mental states.

The court concludes that petitioner has not shown that he received ineffective assistance of counsel.  Rather, trial counsel, in the words of the California Court of Appeal, "expresssed a reasonable basis for the requested instruction:  to lessen the chance that defendant would be found guilty for taking advantage of the elderly victims in a noncriminal manner."  Pet., Ex. 3 at 26.  Additionally, the court did instruct the jurors as to CALJIC No. 2.20, an instruction the jury presumably followed.  Moreover, petitioner has not demonstrated that he suffered any prejudice, especially in light of the undisputed evidence of record.

Habeas relief on this claim is, therefore, DENIED.

### D.    Claim Five: Failure to Sever the Charges

Petitioner contends that the trial court abused its discretion and violated his due process rights in denying his motion to sever the charges that related to each of the four victims. Trav. at 6. Specifically, petitioner contends that the "cases were not cross-admissible against each other, and that joinder of four not-very-strong cases, each one of which was individually defensible, would prejudice petitioner by fostering the inference that petitioner was a shady operator disposed to fleecing vulnerable old people by doing shoddy and overpriced home repairs." Trav. at 22-23.

A joinder, or denial of severance, of co-defendants or counts may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process. *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997); *Herd v. Kincheloe*, 800 F.2d 1526, 1529 (9th Cir. 1986).

A federal court reviewing a state conviction under 28 U.S.C. § 2254 does not concern itself with state law governing severance or joinder in state trials. *Grisby*, 130 F.3d at 370. Its inquiry is limited to the petitioner's right to a fair trial under the United States Constitution. *Id.* To prevail, therefore, the petitioner must demonstrate that the state court's joinder or denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair. *Id.* In addition, the impermissible joinder must have had a substantial and injurious effect or influence in determining the jury's verdict. *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2000).

Jurors are presumed to follow the court's instructions. *McNeil v. Middleton,* 344 F.3d 988, 999-1000 (9th Cir. 2003) (citation omitted).

The court finds that petitioner's claim is meritless. First, the trial court clearly instructed the jury that there were in fact four separate cases. Pet., Ex. 3 at 27. The court also instructed the jurors that they should consider the evidence for each case only as it relates to that case and not in relation to the other three cases. *Id.* Petitioner has not rebutted the presumption that jurors are presumed to follow their instructions. Second, contrary to petitioner's assertion, as discussed above, there was sufficient evidence to

support each case on its own merits. Third, the court reminded the jury of its admonition, quoted above, regarding the use of evidence of the victims' mental states when the jury asked during deliberations whether it could use "evidence of defendant's behavior with respect to one complainant as circumstantial evidence of how he behaved with respect to other complainants." Answer, Ex. B, Vol. 5 at 1354. Accordingly, the court concludes that petitioner has not demonstrated that the denial of his motion to sever rendered his trial fundamentally unfair. Furthermore, even if the refusal to sever was improper, petitioner has not demonstrated that it had a substantial and injurious effect in determining the jury's verdict.

Habeas relief on this claim is, therefore, DENIED.

E.  *Claim Six: Prejudicial Cumulative Constitutional Violations*

Petitioner contends that the "the cumulative effect of the multiple constitutional violations here mandates reversal." Trav. at 28.

Although no single trial error is sufficiently prejudicial to warrant the granting of relief, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003). Cumulative error is more likely to be found prejudicial when the government's case is weak. *See id.*; *see, e.g., Thomas*, 273 F.3d. at 1180. However, where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).

Because the court has found no single constitutional error, there can be no cumulative effect that warrants relief. Accordingly, habeas relief on this claim is DENIED.

**CONCLUSION**

The court concludes that the state court's adjudication did not result in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court. The court also concludes that its adjudication did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For the

1  foregoing reasons, the court DENIES the petition.

2  The clerk shall close the file.

3  **IT IS SO ORDERED.**

4  Dated: September 7, 2007.

PHYLLIS J. HAMILTON
United States District Judge

6  G:\PRO-SE\PJH\HC.04\WATSON354.RUL